**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 3:15-cr-127(3) |
| Plaintiff, | : | Judge Thomas M. Rose |
| v. | : | |
| DALTON ANDREW TRAUM, | : | |
| Defendant. | : | |

_____

**ENTRY AND ORDER DENYING DEFENDANT DALTON TRAUM'S
MOTION TO SUPPRESS (DOC. 119)**
_____

This case is before the Court on Defendant Dalton Andrew Traum's Motion to Suppress (Doc. 119), by which he seeks the suppression of all evidence seized pursuant to a search warrant from his parents' residence in Cincinnati, Ohio and U.S. Beef Cincinnati, LLC's business premises in Fairfield, Ohio.  For the reasons below, the Court **DENIES** the Motion to Suppress.

**I.     BACKGROUND**

In February 2015, the Southern District of Ohio Financial Crimes Task Force ("Task Force") began an investigation into U.S. Beef Cincinnati, LLC ("U.S. Beef"), a retail meat distributor in Fairfield, Ohio.  (Doc. 136 at 2.)  U.S. Beef was suspected of engaging in federal food stamp fraud—specifically, accepting Supplemental Nutrition Assistance Program ("SNAP") benefits from electronic benefit transfer ("EBT") cards in exchange for cash, drugs and other unauthorized items.  (*Id*.)  U.S. Beef was owned and operated by co-Defendants Scott A. Traum and his wife, Joey Lightcap-Traum.  (*Id.*)  Their son, Defendant Dalton Andrew Traum ("Defendant"), worked as driver/sales representative at the business.  (*Id.*)

On August 20, 2015, Special Agent Gregory Engelhard ("SA Engelhard") of the U.S.

Department of Agriculture ("USDA"), Office of Inspector General applied for two search warrants covering Defendant's parents' residence in Cincinnati, Ohio; the U.S. Beef business premises in Fairfield, Ohio; and several vehicles. (*Id*.) The applications for both warrants were supported by an affidavit by SA Engelhard. Magistrate Judge Michael R. Newman determined that probable cause existed for issuance of the warrants, which were then executed on August 26, 2015. (*Id*.) On September 24, 2015, a federal grand jury indicted Defendant, both of his parents, and five others connected to U.S. Beef on 29 counts. (*Id*.)

On March 2, 2016, Defendant's parents filed motions to suppress. (Docs. 87, 88.) On May 3, 2016, the Court held an evidentiary hearing on those motions to suppress, at which SA Engelhard was the sole witness. (Doc. 103.) On September 12, 2016, the Court denied the motions to suppress filed by Defendant's parents. (Doc. 135.)

On July 11, 2016, Defendant filed the Motion to Suppress now before the Court. (Doc. 119.) On July 28, 2016, the Court held an evidentiary hearing on Defendant's Motion to Suppress. (Doc. 124.) SA Engelhard was again the sole witness at the evidentiary hearing, and the parties stipulated that the Court may also consider SA Engelhard's testimony and other evidence submitted at the May 3, 2016 hearing. (Doc. 103 at 2-6.) The parties have submitted post-hearing memoranda and this matter is now ripe for review. (Docs. 131, 136.)

## II. LEGAL STANDARD

The Fourth Amendment to the United States Constitution protects the rights of individuals against unreasonable searches and seizures. *United States v. Ganias*, 755 F.3d 125, 133 (6th Cir. 2014). A search occurs when the Government acquires information by either "physically intruding on persons, houses, papers, or effects" or otherwise invades an area in which the

2

individual has a reasonable expectation of privacy. *Id.* (citing *Florida v. Jardines*, 133 S. Ct. 1409, 1414 (2013)). "A seizure occurs when the Government interferes in some meaningful way with the individual's possession of property." *Id.* (citing *United States v. Jones*, 132 S. Ct. 945 n.5 (2012)). The party seeking suppression of evidence obtained by a search has the burden of proving that the search was unlawful. *United States v. Blakeney*, 942 F.2d 1001, 1014 (6th Cir. 1991).

A search warrant will issue only if "(1) the Government establishes probable cause to believe the search will uncover evidence of a specified crime; and (2) the warrant states with particularity the areas to be searched and the items to be seized." *Ganias*, 755 F.3d at 134. Probable cause "is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). The Supreme Court opined that:

> Finely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision [whether to issue a warrant]. While an effort to fix some general, numerically precise degree of certainty corresponding to "probable cause" may not be helpful, it is clear that "only the probability, and not a *prima facie* showing, of criminal activity is the standard of probable cause."

*Gates*, 462 U.S. at 235 (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). Accordingly, the magistrate judge's task "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238-39. When reviewing the magistrate judge's decision, this Court must determine only whether there was a "substantial basis" for the finding that probable cause existed. *Gates*, 462 U.S. at 238-39

3

(quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). "The ultimate touchstone of the Fourth Amendment is reasonableness." *Ganias*, 755 F.3d at 134 (citing *Missouri v. McNeely*, 133 S. Ct. 1552, 1569 (2013)).

### III. ANALYSIS

Defendant first argues that he had a reasonable expectation of privacy in both his parents' residence and U.S. Beef's business premises, and therefore may challenge the search of those locations under the Fourth Amendment. Defendant then argues that the search warrant was not supported by probable cause and was overbroad. The Court addresses each of Defendant's arguments in turn below.

#### A. Whether Defendant Had a Reasonable Expectation of Privacy In His Parents' Residence and U.S. Beef's Business Premises

The Fourth Amendment "is a personal right that must be invoked by an individual." *Minnesota v. Carter*, 525 U.S. 83, 88 (citing (*Katz v. United States*, 389 U.S. 347, 352 (1967)). To determine whether a person is entitled to the Fourth Amendment's protection, the Supreme Court developed a two-part test. *Smith v. Maryland*, 442 U.S. 735, 740 (1979) (citing *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J. concurring)). First, the individual must have a subjective expectation of privacy in the place or thing to be searched. *See Katz*, 389 U.S. at 361 (Harlan, J. concurring). Second, society must be prepared to recognize that expectation as objectively reasonable. *Id*. Courts have recognized an objective expectation of privacy in a residence where a defendant is an overnight guest. *See United States v. Whitted*, 541 F.3d 480, 489 (3d Cir. 2008).

Here, the Government concedes that Defendant had an objectively reasonable expectation of privacy in only the bedroom where he stayed at his parents' house. (Doc. 103 at 73-76; Doc.

4

124 at 21-23, 56-59, 64.) The Government does not concede that Defendant had a reasonable expectation of privacy in the entirety of his parents' house. While Defendant acknowledges the evidence showing that he stayed in a specific bedroom, he claims that he had a legitimate expectation of privacy in "his parents' home"—not just the bedroom where he slept. (Doc. 131 at 1-3.)

In *Minnesota v. Olson*, 495 U.S. 91 (1990), the Supreme Court held that a defendant's "status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable." *Id.* at 96-97. The Supreme Court did not suggest that an overnight guest's expectation of privacy extended only to the room in which he slept. To the contrary, it stated:

> To hold that an overnight guest has a legitimate expectation of privacy in his host's home merely recognizes the everyday expectations of privacy that we all share. Staying overnight in another's home is a longstanding social custom that serves functions recognized as valuable by society. We stay in others' homes when we travel to a strange city for business or pleasure, when we visit our parents, children, or more distant relatives out of town, when we are in between jobs or homes, or when we house-sit for a friend. We will all be hosts and we will all be guests many times in our lives. From either perspective, we think that society recognizes that a houseguest has a legitimate expectation of privacy in his host's home.
>
> From the overnight guest's perspective, he seeks shelter in another's home precisely because it provides him with privacy, a place where he and his possessions will not be disturbed by anyone but his host and those his host allows inside. We are at our most vulnerable when we are asleep because we cannot monitor our own safety or the security of our belongings. It is for this reason that, although we may spend all day in public places, when we cannot sleep in our own home we seek out another private place to sleep, whether it be a hotel room, or the home of a friend. Society expects at least as much privacy in these places as in a telephone booth—"a temporarily private place whose momentary occupants' expectations of freedom from intrusion are recognized as reasonable," *Katz*, 389 U.S., at 361, 88 S.Ct., at 517 (Harlan, J., concurring).
>
> That the guest has a host who has ultimate control of the house is not inconsistent with the guest having a legitimate expectation of privacy. The houseguest is there

> with the permission of his host, who is willing to share his house and his privacy with his guest. It is unlikely that the guest will be confined to a restricted area of the house; and when the host is away or asleep, the guest will have a measure of control over the premises. The host may admit or exclude from the house as he prefers, but it is unlikely that he will admit someone who wants to see or meet with the guest over the objection of the guest. On the other hand, few houseguests will invite others to visit them while they are guests without consulting their hosts; but the latter, who have the authority to exclude despite the wishes of the guest, will often be accommodating. The point is that hosts will more likely than not respect the privacy interests of their guests, who are entitled to a legitimate expectation of privacy despite the fact that they have no legal interest in the premises and do not have the legal authority to determine who may or may not enter the household. If the untrammeled power to admit and exclude were essential to Fourth Amendment protection, an adult daughter temporarily living in the home of her parents would have no legitimate expectation of privacy because her right to admit or exclude would be subject to her parents' veto.

*Id.* at 98–100.

Here, Defendant was an intermittent overnight guest at his parents' house, was permitted to come and go from the house at will, and stored his personal belongings inside the house. Defendant had an objectively reasonable expectation of privacy in his parents' house, and not just the bedroom that he used, under *Minnesota v. Olson*, 495 U.S. 91 (1990).

The Government opposes Defendant's contention that he also had a reasonable expectation of privacy in U.S. Beef's premises. The Government notes that the business premises were rented, occupied and controlled by Defendants' parents. (Doc. 124 at 59.) U.S. Beef employed Defendant as an independent contractor/sales representative. (*Id.* at 60.) Defendant never maintained or occupied any desk or office space at U.S. Beef's premises and there is no evidence that he generated or maintained any business records stored there. (*Id.* at 61.) The only records seized from U.S. Beef that had any connection to Defendant were daily driver logs, which he did not create. (*Id.* at 60-61.)

The Supreme Court has recognized that an "expectation of privacy in commercial premises

6

... is different from, and indeed less than, a similar expectation in an individual's home." *New York v. Burger*, 482 U.S. 691, 700 (1987). It is possible, however, for an individual to have protectable privacy interest in an office or workplace under the Fourth Amendment. *United States v. Chaves*, 169 F.3d 687, 689 (11th Cir. 1999). The question is whether the individual's connection to the workplace is sufficient to establish a reasonable expectation of privacy. *Id.* at 690. In making this determination, courts consider the degree to which the individual has "custody and control" of the business premises or a private workspace on those premises. *See id.* at 690-91; *O'Connor v. Ortega*, 480 U.S. 709, 717–18 (1987).

Here, Defendant does not have a sufficient connection to U.S. Beef's business premises to support an objectively reasonable expectation of privacy. By way of contrast, the Eleventh Circuit held in *Chaves* that the defendant had a reasonable expectation of privacy in a warehouse where he had the only key to the warehouse and "also kept personal and business papers at the warehouse." *Chaves*, 169 F.3d at 691. No such facts are present here.[1]

### B. Whether Substantial Evidence Exists Supporting the Magistrate Judge's Finding of Probable Cause to Search Defendant's Parents' Residence

Defendant argues that there was not probable cause supporting the search warrant for his parents' residence. The Court previously ruled, upon consideration of the motions to suppress filed by Defendant's parents, that substantial evidence supports the finding that probable cause existed for the issuance of this search warrant. (Doc. 135 at 7.) The analysis supporting that ruling applies with equal force here. In addition to the facts discussed in the Court's prior Order, SA Engelhard's affidavit also states that a confidential informant engaged in 11 illegal SNAP

---

1. As the Court finds that Defendant does not have a legitimate expectation of privacy in U.S. Beef's premises, it does not consider Defendant's argument that the supporting affidavit did not establish probable cause for the search of those premises.

benefits transactions with Defendant.  (Doc. 1-1 at ¶¶ 29, 32, 44.)  Those transactions included the exchange of SNAP benefits for cash and narcotics.  (*Id.*)  Those facts, when coupled with the fact that Defendant regularly stayed at his parents' residence, provide additional support for the determination that probable cause existed for issuance of the warrant.

In its prior ruling, the Court also addressed Defendant's arguments that (1) the comparison in SA Engelhard's affidavit between Schwan's food delivery service and U.S. Beef was flawed, (2) the Better Business Bureau complaints included in SA Engelhard's affidavit were irrelevant to the alleged fraud, and (3) SA Engelhard should have included in his affidavit that U.S. Beef never registered a score indicative of fraud on the USDA Food Nutrition Service's ALERT scale.  (*See* Doc. 135 at 14-16.)  No further analysis of these arguments is necessary here.

Defendant makes one argument regarding the existence of probable cause that the Court has not already addressed, namely that SA Engelhard's affidavit did not provide sufficient information to evaluate the confidential informants' reliability and credibility.  The Court considers the reliability of a confidential informant as part of its analysis of whether the totality of the circumstances presented in a supporting affidavit establishes probable cause.  *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000).

Here, SA Engelhard's affidavit contains information demonstrating the reliability of the confidential informants.  This is not a case where the affiant relies exclusively on a confidential informant's uncorroborated representation that evidence of illegal activity can be found at a particular location.  *Id.* (citing *United States v. Reddrick*, 90 F.3d 1276, 1280 (7th Cir. 1996) (conclusory statement of affiant's belief in informant's past credibility, unsupported by further detail, is insufficient to establish probable cause)).  Engelhard states in his affidavit that his

8

investigation ***began*** when a confidential informant "provided law enforcement authorities credible, trustworthy and reliable information indicating that certain individuals associated with US BEEF were actively engaged in illegal/fraudulent SNAP EBT transactions in exchange for cash." (Doc. 1-1 at ¶ 7.) The subsequent investigation involved law enforcement's monitoring of 15 illegal transactions between confidential informants and U.S. Beef representatives from February 2015 to August 2015. (*Id.* at ¶ 49.) The affidavit contains photographs, which were taken during the alleged illegal transactions, of the U.S. Beef representatives involved. The affidavit also provides the balances of the EBT cards used during the illegal transactions, which confirm the amount of SNAP benefits deducted by the U.S. Beef representatives. Thus, while the affidavit does not contain detailed information about the confidential informants themselves, it contains sufficient information for the Magistrate Judge to have found that they did in fact complete the alleged illegal transactions and that their representations were reliable.

### C. **Whether the Search Warrant Was Overbroad**

Defendant contends that the search warrant was overbroad because it authorized the seizure of "[p]roperty that constitutes evidence of the commission of a criminal offense" and "[p]roperty designed or intended for use which is or has been used as the means of committing a criminal offense." (Doc. 91-3 at 3.) Defendant argues that this language transformed the warrant into "a prohibited general warrant that provided no readily ascertainable guidelines for the executing officers as to what items to seize." (Doc. 131 at 4.)

The Fourth Amendment requires that a warrant describe with "particular[ity] . . . the place to be searched and the persons or things to be seized." U.S. Const. amend. IV. "The purpose of this particularity requirement is to prevent the use of general warrants authorizing wide-ranging

9

rummaging searches in violation of the Constitution's proscription against unreasonable searches and seizures." *United States v. Logan*, 2505 F.3d 350, 364-65 (6th Cir. 2001). Whether a warrant lacks the necessary particularity is determined on a case-by-case basis. *Id.* at 365; *see also United States v. Blair*, 214 F.3d 690, 697 (6th Cir. 2000). If a search warrant is determined to be overbroad, then the Court should invalidate the overbroad portions of the warrant and suppress the evidence seized pursuant to those portions. *See United States v. Greene*, 250 F.3d 471, 476-77 (6th Cir. 2001).

Here, but for the clause highlighted by Defendant, the search warrant is sufficiently particularized to satisfy the Fourth Amendment. Attachment B to the search warrant contains a detailed list of the targets of the search, which are reasonably related to the alleged food stamp fraud under investigation. For example, Attachment B authorizes the seizure of "[b]ooks, records, invoices, vouchers, business logs, and any other documentation relative to the daily operations of a business indicating the profit and expenses specific to **US BEEF CINCINNATI LLC, dba US BEEF,** *3210 Profit Drive, Fairfield, Ohio 45014***,** and/or **SCOTT TRAUM** and **JOEY LIGHTCAP-TRAUM,** *5935 Orchard Hills Lane, Cincinnati, Ohio 45252*." (Doc. 91-3 at 3 (emphasis in original).)

The portion of the search warrant that Defendant challenges as overbroad is a boiler-plate, catch-all clause. As the Sixth Circuit held in *Greene*, however, inclusion of this catch-all clause does not invalidate the entire search warrant. 250 F.3d at 477. The appropriate remedy for overbreadth is severing that clause from the search warrant. *Id.* (citing *United States v. Blakeney*, 942 F.2d 1001, 1027 (6th Cir.1991)).

Severing the overbroad clause from the warrant here does not provide any remedy to

Defendant.  Defendant does not identify the specific evidence seized pursuant to this clause that he seeks to suppress.  Defendant asserts that items "such as currency, firearms and vehicles" were seized that "have not been shown to have any relationship to the offense."  (Doc. 131 at 5.)  The vehicles were not seized pursuant to the catch-all clause.  They are specifically listed on the first page of Attachment B.  (Doc. 91-3 at 1.)  On May 18, 2016, the Court granted, in part, Defendant Scott Traum's motion for the return of currency and firearms seized from his residence. Defendant has not identified any other evidence seized pursuant to the catch-all clause that should be suppressed.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Suppress (Doc. 119) is **DENIED**.

**DONE** and **ORDERED** in Dayton, Ohio, this Monday, October 24, 2016.

s/Thomas M. Rose

_____

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE